**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3587-21

JOHN BRIDGEFORTH,

    Plaintiff-Appellant,

v.

CITY OF NEWARK,

    Defendant-Respondent.

_____

Argued October 31, 2023 – Decided January 11, 2024

Before Judges Smith and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-9119-17.

Daniel W. Heinkel argued the cause for appellant (Heinkel Law, LLC, attorneys; Daniel W. Heinkel, on the briefs).

Victor Alexander Afanador argued the cause for respondent (Lite DePalma Greenberg & Afanador, LLC, attorneys; Victor Alexander Afanador, of counsel and on the brief; Immanuel O. Adeola and Emily E. Fea, on the brief).

PER CURIAM

Defendant City of Newark (City) hired plaintiff as a temporary employee on June 29, 1999. Nearly eleven months later, plaintiff submitted a signed change of address form representing his compliance with the city residence requirement. While still a temporary employee, plaintiff submitted a certificate of alternate residence on October 29, 2002, by his landlord's representative. Both forms showed the same Newark address for plaintiff. Shortly thereafter, plaintiff was appointed by the City to the permanent position of lead inspector with the Department of Child and Family Well-Being. Plaintiff continued as a full-time City lead inspector up until the time of his arrest.

Over nine years later, on August 8, 2012, plaintiff was arrested by Newark police and charged with multiple drug possession crimes, allegedly committed during city work hours. He was detained in the Essex County Jail for nearly two years.

During the twenty-two months of plaintiff's detention, the City filed disciplinary action against him. First, the director of the City's Department of Child and Family Well-Being wrote plaintiff at an Irvington address on August 9, 2012, informing him in part: "You were immediately suspended on August 8, 2012. You have been served with a Preliminary Notice of Disciplinary Action (PDNA) with the charges and general evidence in support of the charges

2

A-3587-21

attached." The letter went on to inform plaintiff he would have a chance to review and respond to the charges. The letter presented plaintiff with a deadline for responding in writing, and it advised him "a departmental hearing may be scheduled." The letter was returned to sender marked "unable to forward."

On August 24, 2012, the City issued another PDNA seeking defendant's termination, charging him with various offenses: conduct unbecoming a public employee; neglect of duty; and other causes. See, N.J.A.C. 4A:2-2.3(a)(6), (7), and (12). The PNDA detailed the criminal allegations against plaintiff, and also informed him that he had a right to request a departmental hearing to address the charges. The PDNA included plaintiff's Newark address, but it was returned and marked "RETURN TO SENDER," "ATTEMPTED – NOT KNOWN," "UNABLE TO FORWARD."

Nine months later, on May 30, 2013, the City sent a letter to plaintiff informing him that he had a right to seek a departmental hearing on his charges. The letter was sent to plaintiff's Newark address via regular and certified mail. Both documents were returned to the City undelivered.

On July 22, 2013, the City issued a Final Notice of Disciplinary Action (FNDA), which was sent to plaintiff's Newark address via certified mail. The

FNDA noted that "[plaintiff] did not request a hearing," and stated he had been removed from his position effective August 8, 2012.

Five months later, on January 30, 2014, plaintiff sent correspondence to the City requesting that his 2012 Form W-2 be sent to the Essex County Jail. In the same letter he asked that the City send his "last remaining pay[]check" to the jail as well, identifying that check as his pay for the week of August 8, 2012.

On June 8, 2014, plaintiff was released on bail. On July 28, 2014, the State dismissed all charges against plaintiff.

The record shows that plaintiff engaged in negotiations to be reinstated as soon as the charges were dismissed. These negotiations ebbed and flowed for nearly three years. During this time, plaintiff took a position with an employment agency, which in turn assigned him to work with the City on a lead removal-related community project. Plaintiff was represented by counsel during this time.

When the negotiations did not bear fruit, plaintiff filed an eight-count complaint against the City on December 28, 2017, alleging a constitutional due process claim stemming from his dismissal under 41 U.S.C. section 1983, a violation of the "New Jersey Public Employees Act,"[1] breach of contract, breach

---

[1] We interpret plaintiff's complaint to allege violations of N.J.S.A. 11A:2-13.

of the implied contract of good faith and fair dealing, equitable claims, and breach of a "settlement agreement." Defendant answered, pleading various defenses, including plaintiff's failure to exhaust administrative remedies.

The parties engaged in contentious discovery and bickered over procedural issues before plaintiff finally filed a motion for summary judgment, seeking a finding of liability against the City on the Section 1983 claim. Plaintiff alleged the City failed to show that it mailed the PNDA and the FNDA to plaintiff notifying him of his discipline and ultimate termination. The trial court denied the motion, finding the question of which address plaintiff provided the City, and whether he updated his address, were questions for the finder of fact. The court denied plaintiff's reconsideration motion.

After multiple trial adjournments, the City moved for summary judgment, arguing among other things that plaintiff had failed to exhaust his administrative remedies. Plaintiff cross-moved for summary judgment, raising issues identical to his previous motion. The trial court granted the City's motion, making findings on the exhaustion issue:

> In this case . . . [p]laintiff did not appeal his employment termination with a [C]ivil [S]ervice [C]ommission. In addition, the [C]ity's negotiations with a [p]laintiff over his reemployment was separate and distinct from . . . [p]laintiff – [p]laintiff's termination because the City made it clear it does not

believe . . . [p]laintiff was wrongfully terminated. And . . . [p]laintiff had the benefit of counsel during the . . . negotiations. [I]t's reasonable to conclude that . . . [p]laintiff's [c]ounsel during his negotiations either did not believe . . [p]laintiff was wrongfully terminated or was unaware that [p]laintiff sought to challenge [termination] rather than be rehired.

The judge denied plaintiff's cross-motion. Plaintiff appeals the orders denying his 2020 summary judgment motion, his 2020 motion for reconsideration, and his 2022 summary judgment motion. Plaintiff argues that the trial court erred when it granted the City's summary judgment motion on the statute of limitations. However, plaintiff has not addressed the trial court's finding that he failed to exhaust administrative remedies.

"We review a trial court's grant of summary judgement de novo, applying the same standard as the trial court." Hyman v. Rosenbaum Yeshiva of North Jersey, 474 N.J. Super. 561, 572 (App. Div. 2023), certif. granted, 255 N.J. 419 (Oct. 6, 2023). That standard is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995) (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 251-52 (1986)).

6

We first address defendants' exhaustion of remedies claim. Although plaintiff did not address this issue on appeal, its resolution is dispositive of the due process and statutory counts of plaintiff's claim.

N.J.S.A. 11A:2-6 authorizes the Civil Service Commission to remove permanent career service employees after a hearing. N.J.S.A. 11A:2-15 specifies the time within which employees seeking to challenge aa FNDA must file their administrative appeal. It states:

> Any appeal from adverse actions . . . shall be made in writing to the Civil Service Commission no later than [twenty] days from receipt of the final written determination of the appointing authority. If the appointing authority fails to provide a written determination, an appeal may be made directly to the Civil Service Commission within reasonable time.

The record shows no dispute about plaintiff's classification status as a Civil Service employee of the City at the time he was terminated. This means the Civil Service rules for appealing discipline applied to him. A plain reading of N.J.S.A. 11A:2-15 shows plaintiff had to file an appeal with the Civil Service Commission to contest an adverse employment action within twenty days of "receipt of the final written determination of the [City]." Viewed in the light most favorable to plaintiff, see Crisitello v. St. Theresa School, 255 N.J. 200, 218 (2023), there is no proof in the record that the City "provide[d] a written

7

determination" of its decision to terminate to plaintiff.  This eliminates the need to resolve the parties' conflict over whether the City mailed its FNDA to plaintiff at the proper address.

We move to the last sentence of N.J.S.A. 11A:2-15 to determine on this record what a "reasonable time" would be for plaintiff to have filed his administrative appeal.  To accomplish this, we must first answer the question: when did plaintiff learn that he had been fired from his position with the City?  The record shows two relevant dates:  January 30, 2014, when plaintiff wrote the City's human resources department seeking his tax records and his "last paycheck," and August 5, 2014, when the City's chief of staff, Amiri Baraka, wrote the new director of the Newark Department of Child and Family Well-Being, Dr. Hanaa Hamdi, transmitting plaintiff's request for "reinstatement" and back pay from August 9, 2012.  The letter also included a third Newark mailing address for plaintiff.  The record clearly shows plaintiff knew of his termination as early as January 30, 2014 when he asked for his final paycheck.  It is equally clear that plaintiff was aware of his termination, at the latest, on August 5, 2014 when he sought reinstatement and back pay upon his release from prison.

Since plaintiff has never filed the requisite Civil Service appeal in this matter, we ask:  if plaintiff filed his Civil Service appeal today, would a delay

8

of nearly ten years be considered reasonable under N.J.S.A. 11A:2-15? The answer is an unequivocal no. Plaintiff was well beyond the time for filling the proper administrative appeal to challenge his termination by the City. Consequently, the trial court did not err when it dismissed counts two (claim under N.J.S.A. 11A:2-13) and four (employee handbook breach of contract) of plaintiff's complaint for failure to exhaust administrative remedies.

In as much as plaintiff's constitutional due process claim, grounded in Section 1983, is based on the concept that he was entitled to receive notice of the City's disciplinary action against him so that he could take action to protect his property interest in his permanent job title, and didn't receive such notice, the record undercuts that argument. Because the record shows he had actual notice, count one fails as well.[2]

We turn to plaintiff's remaining theories. We consider them on the merits because statute of limitations considerations for each claim present fact questions about accrual that we need not address. For purposes of summary

---

[2] To the extent plaintiff's federal due process claim would be cognizable independent of plaintiff's actual notice of his termination, the two-year statute of limitations applicable to this cause of action bars it. See N.J.S.A. 2A:14-2(a); Nguyen v. Pennsylvania, 906 F.3d 271, 273 (3d Cir. 2018) ("Section 1983 has no statute of limitations of its own, but borrows the statute of limitations from state personal-injury torts.").

judgment, we give all inferences to plaintiff and address his claims on the merits. See Crisitello 255 N.J. at 218.

As to counts three and eight, plaintiff alleges that after he was terminated, he entered into an agreement with the City. He alleges that the City promised to reinstate him to his previous job in exchange for foregoing any claims for "back pay" based on his previous job title of lead inspector. Plaintiff cites to numerous letters and emails in the record, including his letter to the City of October 23, 2014, which he contends supports at least a genuine issue of fact on the question of whether the parties entered into an agreement.

Our review of the record reveals extensive and detailed correspondence documenting plaintiff's requests, and correspondence from various city officials promising to look into job openings, then informing plaintiff that no openings were available. There is no evidence from which a finder of fact could infer that the parties had reached an agreement to rehire plaintiff, and we conclude the evidence in the record "is so one-sided that one party must prevail as a matter of law." Brill, 142 N.J. at 536. Counts three and eight cannot survive summary judgment on the merits.

Plaintiff's final theory of unjust enrichment was asserted in count five of his complaint. Plaintiff alleges the City arranged for plaintiff to take a position

10

at a temporary employment agency which, in turn, hired him back to the City. Plaintiff alleges that he then performed lead abatement related services which helped the City secure over six million dollars in federal grants. Plaintiff alleges the City's actions in assisting him to obtain "temporary" employment through an employment agency, for wages less than what he made as a full-time City employee, amounted to "bad faith" when juxtaposed against the substantial grant sums plaintiff helped obtain for the City. Calling this "unjust enrichment," plaintiff seeks damages.

The two elements of a quasi-contractual claim of unjust enrichment are: (1) the defendant received a benefit; and (2) retention of the benefit without payment would be unjust. Goldsmith v. Camden Cnty. Surrogate's Off., 408 N.J. Super. 376, 382 (App. Div. 2009). A plaintiff must prove both elements and show he or she expected remuneration from the defendant at the time the plaintiff performed or conferred a benefit on the defendant and that the failure of remuneration enriched the defendant beyond his or her contractual rights. Thieme v. Aucoin-Thieme, 227 N.J. 269, 288 (2016). Plaintiff, with the City's help, obtained a position with an employment agency doing some of the same tasks he performed while a permanent City employee. Plaintiff was compensated as a temporary employee and, partially through his efforts, the City

secured its federal grant. There is no failure of renumeration, as plaintiff was paid for his work by the temporary agency. The City obtained the grant for which it applied and was deemed qualified, no more, no less. Plaintiff's unjust enrichment claim has no merit.

To the extent not addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R.2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3587-21